1

2

3

4

5

6                     UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
7                            AT SEATTLE

EDWARD NORTON,
8
                          Plaintiff,              Case No. C16-5641-JCC
9
        v.                                        ORDER AFFIRMING THE
                                                  COMMISSIONER'S FINAL
10                                                DECISION AND DISMISSING THE
   NANCY A. BERRYHILL, Acting                     CASE WITH PREJUDICE
11 Commissioner of Social Security,[1]

12                        Defendant.

13        Edward Norton seeks review of the denial of his application for Title II Disability

14 Insurance Benefits and Title XVI Supplemental Security Income.  Mr. Norton contends the ALJ

15 erred in: (1) failing to find chronic pain syndrome and sacroiliac (SI) joint arthritis severe

16 impairments at step two; (2) evaluating the opinions of Oscar Cogan, M.D. and Lynn L. Staker,

17 M.D., with respect to his physical impairments; (3) evaluating the opinions of examining

18 psychologists Kimberly Wheeler, Ph.D., Norma Brown, Ph.D., Katrina Higgins, Psy.D., and Dan

19 Neims, Psy.D. with respect to his mental impairments; (4) evaluating his own symptom

20 testimony; and, (5) evaluating the lay witness testimony.  Dkt. 9.  As relief, Mr. Norton contends

21 _____

   [1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration.  Pursuant to
22 Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as
   defendant in this suit.  The Clerk is directed to update the docket, and all future filings by the parties
23 should reflect this change.

   ORDER AFFIRMING THE
   COMMISSIONER'S FINAL DECISION AND
   DISMISSING THE CASE WITH PREJUDICE
   - 1

this matter should be reversed and remanded for further proceedings.  *Id.* at 19.  As discussed

below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with

prejudice.

## BACKGROUND

In September 2006, Mr. Norton applied for Title II benefits, alleging disability as of

August 5, 2005.  Tr. 1457.  Mr. Norton's claim was denied initially and on reconsideration and

by Administrative Law Judge (ALJ) M.J. Adams in a hearing level decision dated March 30,

2009.  *Id.*  ALJ Adams' decision was remanded and Mr. Norton's subsequent claim for Title II

and Title XVI benefits were associated with the original claim.  *Id.*  ALJ Adams issued another

unfavorable decision on March 14, 2013.  *Id.*  ALJ Adams' decision was remanded again by the

Appeals Council pursuant to an order by the District Court.  *Id.*  On March 17, 2016, ALJ Larry

Kennedy conducted a hearing and on May 16, 2016, issued a decision finding Mr. Norton not

disabled.  Tr. 1457-1473.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:**  Mr. Norton has not engaged in substantial gainful activity since August 5, 2005, the alleged disability onset date.

**Step two:**  Mr. Norton has the following severe impairments: degenerative disc disease, obesity, dyslexia, learning disorder (reading and writing), major depressive disorder versus adjustment disorder, anxiety disorder versus panic, and personality disorder.

**Step three:**  These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:**  Mr. Norton can perform light work with additional limitations.  He can occasionally balance, stoop, kneel, and crouch.  He cannot climb or

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

crawl.  He must avoid concentrated exposure to vibration and hazards.  He can perform simple, routine tasks and follow short, simple instructions.  He can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period.  He requires a work environment with minimal supervisor contact.  (Minimal contact does not preclude all contact, rather it means that contact does not occur regularly.  Minimal contact also does not preclude simple and superficial exchanges and does not preclude being in proximity to the supervisor.).  He can work in proximity to coworkers, but not in a cooperative or team effort.  He requires a work environment that has more than superficial interactions with coworkers.  He requires a work environment that is predictable and with few work setting changes.  He requires a work environment without public contact.  He cannot be required to read detailed or complex instructions, to write reports, or to do detailed or complex math calculations such as in a teller or a cashier position.

**Step four:**  Mr. Norton cannot perform past relevant work.

**Step five:**  As there are jobs that exist in significant numbers in the national economy that Mr. Norton can perform, he is not disabled.

Tr. 1459-1463.  Mr. Norton now appeals ALJ Kennedy's decision denying him benefits.

# DISCUSSION

The Court may reverse an ALJ's decision only if it is not supported by substantial evidence or if the ALJ applied the wrong legal standard.  *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  Even then, the Court will reverse the ALJ's decision only if the claimant demonstrates that the ALJ's error was harmful.  *Id.*

**A.    Step Two**

Mr. Norton contends the ALJ harmfully erred in failing to include chronic pain syndrome and mild SI joint arthritis as severe impairments at step two.  Dkt. 9.  The Court disagrees.

At step two of the sequential evaluation, the Commissioner must determine "whether the claimant has a medically severe impairment or combination of impairments."  *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1520(a)(4)(ii).  The claimant has the burden to show that (1) she has a medically determinable physical or mental impairment, and

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE

- 3

1  (2) the medically determinable impairment is severe.  *See Bowen v. Yuckert*, 482 U.S. 137, 146

2  (1987).  A "'physical or mental impairment' is an impairment that results from anatomical,

3  physiological, or psychological abnormalities which are demonstrable by medically acceptable

4  clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).  Thus, a

5  medically determinable impairment must be established by objective medical evidence from an

6  acceptable medical source.  20 C.F.R. § 404.1521.  "'Regardless of how many symptoms an

7  individual alleges, or how genuine the individual's complaints may appear to be, the existence of

8  a medically determinable physical or mental impairment cannot be established in the absence of

9  objective medical abnormalities; i.e., medical signs and laboratory findings[.]'"  *Ukolov v.*

10  *Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting SSR 96-4p).

11      In addition to producing evidence of a medically determinable physical or mental

12  impairment, the claimant bears the burden at step two of establishing that the impairment or

13  impairments is "severe."  *See Bowen*, 482 U.S. at 146.  An impairment or combination of

14  impairments is severe if it significantly limits the claimant's physical or mental ability to do

15  basic work activities.  20 C.F.R. §§ 404.1520(c).  "The step two inquiry is a de minimus

16  screening device to dispose of groundless claims."  *Smolen*, 80 F.3d at 1290.  An impairment or

17  combination of impairments may be found "'not severe' only if the evidence establishes a slight

18  abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Id.*

19  (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)).  However, the claimant has the

20  burden of proving her "impairments or their symptoms affect her ability to perform basic work

21  activities."  *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).

22      Mr. Norton notes that he was diagnosed with chronic pain syndrome by several

23  providers.  Dkt. 9 at 4.  However, the providers who mention chronic pain syndrome discuss Mr.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 4

1    Norton's chronic pain only in the context of his lower back problems.  Mr. Norton fails to

2    explain how harmful error resulted from the ALJ's failure to consider chronic pain as a separate

3    syndrome rather than a symptom of his lower back problems.  Mr. Norton fails to identify any

4    evidence indicating that chronic pain syndrome produces pain independent of or different from

5    the pain he alleges flows from his lower back impairment, and the ALJ included degenerative

6    disc disease as a severe impairment.  Moreover, a diagnosis alone is not sufficient to establish a

7    severe impairment.  Instead, a claimant must show that her medically determinable impairments

8    are severe.  20 C.F.R. §§ 404.1520(c), 416.920(c).  In this case, Mr. Norton has not demonstrated

9    that chronic pain syndrome limits his ability to perform basic work activities to a greater extent

10   than considered by the ALJ in evaluating the pain and symptoms allegedly flowing from his

11   lumbar degenerative disc disease.

12        Even if the ALJ should have included chronic pain syndrome as a separate severe

13   impairment at step two, any error was harmless as he considered Mr. Norton's pain symptoms in

14   assessing his RFC and, as discussed below, properly discounted Mr. Norton's pain testimony.

15   *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that an ALJ's failure to list an

16   impairment as severe at step two is harmless error where limitations caused by that impairment

17   were considered at step four).  Mr. Norton speculates that "chronic pain syndrome *may* explain

18   the degree of limitation Plaintiff experiences from pain, and *may* result in a more significantly

19   limited residual functional capacity assessment."  Dkt. 9 at 5.  However this argument is purely

20   speculative and Mr. Norton fails to identify evidence establishing that chronic pain syndrome

21   produced a limitation beyond what was considered by the ALJ or included in the RFC. *See id.*

22        Mr. Norton also notes that he was diagnosed with mild SI joint arthritis.  Dkt. 9 at 5.

23   However, Mr. Norton has not demonstrated that SI joint arthritis significantly limits his ability to

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 5

1  perform basic work activities.  Mr. Norton fails to identify any evidence indicating that SI joint

2  arthritis produces pain or symptoms independent of or different from the pain the ALJ

3  considered as flowing from his lower back degenerative disc disease, which the ALJ did include

4  as a severe impairment.[4]  In fact, the ALJ specifically notes that "[r]egardless of the exact

5  diagnoses, I have considered the claimant's pain in connection with his spinal impairment, along

6  with all of his mental health symptoms in assessing listing level severity and the residual

7  functional capacity."  Tr. 1460.  Mr. Norton fails to point to evidence demonstrating that this is

8  not the case.

9        Mr. Norton argues that:

10            [the diagnosis of SI joint arthritis] is significant because in March 2011,
              reviewing physician Wayne Hurley, M.D. adopted an assessment that
11            Plaintiff could stand/walk two hours per day and "uses a cane to keep
              pressure off sciatic nerve." Tr. 1201.  The ALJ rejected Dr. Hurley's
12            finding indicating that it was not supported because lumbar spine
              imaging showed only mild to moderate degenerative disc disease and
13            EMG/NCV testing had been normal.  Tr. 1468.  This does not address
              the SI arthritis.  Because the ALJ did not find that Plaintiff had SI joint
14            arthritis, he failed to recognize support for Plaintiff's need to use a cane
              and difficulty standing and walking.

15  Dkt. 9 at 5.  However, the ALJ did discuss SI joint arthritis in evaluating the medical evidence

16  and Mr. Norton's testimony and in determining the RFC at step four.  For instance, the ALJ

17  noted that "[a] bone scan showed only mild uptake at the SI joints representing degenerative

18  changes with no signs of inflammatory disease", "on examination in February 2013, he had only

19  slight tenderness in the SI joints and paraspinous muscles, there was no sciatic notch tenderness,

20  he could flex to touch the mid tibia (limited by hamstring and lower back pain), straight leg

21  raising was negative until 75 degrees bilaterally, and he had normal sensation and reflexes."  Tr.

22

23  _____
    [4] At the hearing, medical expert Dr. Kwock testified that the SI joint is in the lower back "where the spine comes
    down and starts to join the pelvis."  Tr. 1498.
    ORDER AFFIRMING THE
    COMMISSIONER'S FINAL DECISION AND
    DISMISSING THE CASE WITH PREJUDICE
    - 6

1464-1465.  The ALJ further noted that:

> Based on a review of the evidence, Dr. Kwock [the reviewing medical expert who testified at the hearing] classified the claimant's degenerative disc disease and sacroiliac joint osteoarthritis as mild with no indication that anything was bothering the nerves going down his legs.  Although the claimant walked with a cane and he complained of radiating back pain and limited range of motion, examinations revealed nothing to suggest any neurologic involvement.  Dr. Kwok opined that claimant could perform light work with frequent balancing, stooping, kneeling, crouching, and climbing of ramps and stairs, and occasional crawling and climbing of ladders, ropes, or scaffolds.  Dr. Kwock added that the claimant's obesity was not that bad and that he had no medical necessity for a cane.

Tr. 1466.  The ALJ gave greater weight to the 2016 opinion of Dr. Kwock that Mr. Norton could perform light work with some additional postural limitations than to the 2010 opinion of Dr. Hurley.  Tr. 1468.  The ALJ found Dr. Kwock's opinion consistent with the objective clinical findings, the claimant's longitudinal treatment history, and his performance on physical examinations.  *Id.*  The ALJ specifically noted that, as Dr. Kwok also pointed out, lumbar spine imaging showed no more than mild to moderate degenerative disc disease and EMG/NCV testing was consistently normal.  Tr. 1468, 1499-1500.  Moreover, the ALJ had previously noted Dr. Kwok's findings that: sacroiliac joint osteoarthritis was mild with no indication that anything was bothering the nerves going down [Mr. Norton's] legs; although the claimant walked with a cane and he complained of radiating back pain and limited range of motion, examinations revealed nothing to suggest any neurologic involvement; and there was no medical necessity for the cane.  Tr. 1466.  Dr. Hurley did not address the medical necessity, or lack thereof, of the cane in his opinion but his limitation to at least two hours of walking appears to be based partly on the observation that Mr. Norton sometimes ambulated with a cane due to his alleged sciatica.  Tr. 1201, 1234.

Under the circumstances, the ALJ reasonably afforded greater weight to the opinion of

1   Dr. Kwok than to that of Dr. Hurley.  *See Sousa v. Callahan,* 143 F.3d 1240, 1244 (9th Cir.1998)

2   (An ALJ may reject the opinion of a non-examining doctor by referring to specific evidence in

3   the record.).  Dr. Kwok had the opportunity to review the entire treatment record and provided a

4   detailed explanation for his opinion that, given the mild objective findings on imaging and

5   examination, Mr. Norton was able to perform light work with additional postural limitations.

6   *See* 20 C.F.R. § 404.1527 (in weighing medical opinion evidence the ALJ will consider

7   consistency with the record as a whole and, in considering nonexamining opinions, the weight

8   afforded those opinions will depend on the degree to which they provide supporting explanations

9   for their medical opinions).

10        Moreover, the ALJ discussed Mr. Norton's SI joint arthritis and allegations of pain and

11   radicular symptoms in assessing his RFC and, as discussed below, properly discounted Mr.

12   Norton's subjective symptom testimony.  Tr. 1464-1469.  Thus, even if the ALJ should have

13   included SI joint arthritis as a separate severe impairment at step two, Mr. Norton fails to

14   demonstrate the alleged error was harmful.  *See Lewis*, 498 F.3d at 911.  *Id.*  Mr. Norton fails to

15   identify evidence establishing that SI joint arthritis produced a symptom or limitation beyond

16   what was considered and either properly rejected by the ALJ or included in the RFC.  *Id.*

17  **B.**    **Medical Evidence**

18        The ALJ must provide "clear and convincing reasons" to reject the uncontradicted

19   opinion of an examining doctor.  *Lester v. Chater*, 81 F.3d 821, 830, 831 (9th Cir. 1996).  When

20   contradicted, a treating doctor's opinion may not be rejected without "specific and legitimate

21   reasons" that are supported by substantial evidence in the record.  *Id.*  The ALJ is responsible for

22   determining credibility, resolving conflicts in medical testimony, and resolving all other

23   ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court cannot reweigh

1  the evidence or substitute its judgment for that of the ALJ.  *Thomas v. Barnhart*, 278 F.3d 947,

2  954 (9th Cir. 2002).

3      *1.*    **Physical Impairments**

4      Mr. Norton contends the ALJ erred in evaluating the treating and examining opinions of

5  Lynn L. Staker, M.D., and Oscar Cogan, M.D.  Dkt. 9 at 6-12.  The Court disagrees.

6      In 2007, Dr. Staker performed a Department of Social and Health Services (DSHS)

7  assessment of Mr. Norton.  Tr. 442-444.  Dr. Staker indicated Mr. Norton was limited to

8  sedentary work and that it was difficult to say whether he could sustain sedentary work.  *Id.*  In

9  January 2012, Dr. Cogan performed a DSHS assessment in which he opined that Mr. Norton

10  could lift twenty pounds maximum but was unable to frequently lift or carry any weight.  Tr.

11  930-931.  Dr. Cogan did not check any of the boxes indicating Mr. Norton had the ability to

12  stand for six hours in an eight hour workday with standard rest breaks, sit for prolonged periods

13  with occasional pushing and pulling of arm or leg controls, or sit for most of the day with

14  walking or standing for brief periods.  *Id.*  Dr. Cogan opined that participation in training or

15  employment activities was not appropriate at this time.  *Id.*  The ALJ discounted Dr. Staker and

16  Dr. Cogan's opinions as "inconsistent with the objective clinical findings, the claimant's

17  longitudinal treatment history, and his performance on physical examinations set forth above."

18  Tr. 1470.  The ALJ specifically noted that "lumbar spine imaging showed no more than mild to

19  moderate degenerative disc disease, electrodiagnostic testing was repeatedly normal, he has

20  consistently been neurologically intact, and his pain has been adequately managed with

21  medication without side effects."  *Id.*

22      An ALJ may properly reject a medical opinion that is inconsistent with the record.

23  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 9

treating physicians' opinions that are unsupported by objective medical findings or the record as a whole); *see also* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion.").  An ALJ may give less weight to a medical opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  Further, an ALJ may reject a medical opinion where the source's opinion is not supported by her own medical records or objective findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Dr. Staker reviewed a 2007 MRI that showed only mild to moderate disc degenerative changes, a L5-S-1 central disc protrusion and small inferior extrusion perhaps increased only slightly from previous testing, no central nerve or thecal sac mass effect, neuroforaminal stenosis, or lateral exiting nerve root impingement.  Tr. 442-448.  Dr. Staker performed a physical examination in which she noted some tenderness in the low back, slightly reduced range of motion on lumbar flexion, and "pain on sciatic stress test at 70 degrees in the right posterior pelvic." Tr. 443.  She diagnosed Mr. Norton with "significant low back pain and sciatica." *Id.* In the "Plan and Assessment" portion of her report Dr. Staker indicates that:

> He feels he [is] incapable of doing any significant lifting, bending, twisting, walking, or sitting.  The updated MRI does show there may be slight increased in extrusion, but the situation still is not surgical.  He would benefit from conservative measures.  As far as vocation, it's difficult to say what level of work he could sustain on a full-time basis.  He would be sedentary level at this time.  Whether he'd be capable of sustaining that would be difficult to say.

Tr. 442.  Mr. Norton argues that the MRI results, normal electrodiagnostic (EMG/NCV) testing

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 10

and normal neurological findings are not sufficient to discount Dr. Staker's opinion. Dkt. 9 at 8.

However, Dr. Staker's opinion is based in part on a diagnosis of sciatica, or radiating pain, and,

as such, the Court cannot say the ALJ was unreasonable in finding the mild to moderate MRI

findings, routinely normal electrodiagnostic testing and normal neurological findings, in addition

to the other mild and normal findings, undermined the finding that this alleged symptoms or

impairment was significantly limiting. Moreover, the ALJ did not rely solely on these findings

but discounted Dr. Staker's opinion as "inconsistent with the objective clinical findings, the

claimant's longitudinal treatment history, and his performance on physical examinations set forth

above." Tr. 1470. The ALJ listed MRI, EMG/NCV and neurological testing as examples of the

by-and-large mild objective clinical findings in the record, which he summarized in detail in the

preceding section of the opinion. In addition to these test results, the ALJ noted that, with

occasional exceptions, throughout the record on examination Mr. Norton frequently had normal

straight leg test, could heel and toe walk and squat, had intact motor function, reflexes, strength,

and sensation. Tr. 1464-1466. The ALJ also pointed out that the medical record showed Mr.

Norton reported exacerbation of his back symptoms to providers after performing particularly

strenuous activities (in excess of sedentary work) such as working on his roof or lifting heavy

objects, activities which, as noted below, the ALJ reasonably found to be inconsistent with Mr.

Norton's claims regarding the severity of his symptoms. *Id.* Mr. Norton's arguments do not

otherwise meaningfully challenge the ALJ's overall description of the longitudinal medical

record as predominately demonstrating mild or normal findings on testing and physical

examination.[5]

---

[5] The Court also notes that the ALJ gives significant weight to Dr. Kwock's opinion as consistent with the objective clinical findings, the claimant's longitudinal treatment history, and his performance on physical

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 11

The ALJ also discounted Dr. Staker's opinion noting that the longitudinal record shows Mr. Norton's pain has been "adequately managed with medication without side effects." Tr. 1470; *see Ware*, 439 F.3d at 1006. Substantial evidence supports this finding. For instance, the ALJ notes that: Mr. Norton underwent a pain management evaluation in July 2012 and was prescribed gabapentin and physical therapy; records from November 2012 indicated that his back and leg pain was significantly improved on gabapentin; physical therapy was again recommended but, although he showed some mild benefit after a few sessions, he was discharged in early-2013 after no showing or cancelling on several occasions and was presumed by the physical therapist to be managing adequately on his own with no need for further physical therapy treatment; in January 2013 he reported he was "mostly satisfied with his pain treatment"; he was noted to ambulate with a cane at some times but not others; and even when using a cane, on examination his balance was noted to be overall good and he frequently had normal or minimal musculoskeletal findings. Tr. 1333, 1465-1466. Mr. Norton contends this rationale is invalid and cites various treatment notes indicating that, at times, he continued to report symptoms even with treatment. Dkt. 9 at 10-12. However, the ALJ did not find that Mr. Norton had no ongoing symptoms or impairments whatsoever but only that they were not as limiting as Dr. Staker found. Mr. Norton's references to a few treatment notes in which he alleged some ongoing pain fail to establish the ALJ's reading of the record, as demonstrating improvement and

_____

examinations. Tr. 1468. Dr. Kwok bases his opinion regarding the lack of significant radiating symptoms in part on the consistently normal EMG/NCV testing. There is no indication Dr. Staker considered EMG/NCV testing results and, as such, for this reason as well, the Court also cannot say it was unreasonable for the ALJ to give greater weight to Dr. Kwok's opinion than to that of Dr. Staker. *See Andrews v. Shalala*, 53 F.3d 1035, (9th Cir. 1995) ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.").

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 12

1    management of symptoms with treatment, was unreasonable.  *See Tommasetti*, 533 F.3d at 1038

2    (When the evidence is susceptible to more than one rational interpretation, the court must affirm

3    the ALJ's findings if they are supported by inferences reasonably drawn from the record.).

4         In sum, the ALJ reasonably discounted Dr. Staker's opinions as inconsistent with the

5    longitudinal treatment record, objective clinical findings, physical examination findings, and

6    evidence his pain was adequately managed with treatment.

7         Dr. Cogan also evaluated Mr. Norton in 2012 and, as described above, found him more

8    limited than provided in the RFC.  However, it is unclear what Dr. Cogan's assessment is based

9    upon.  Tr. 930-931.  The treatment notes corresponding to the date of evaluation do not indicate

10   that Dr. Cogan performed any physical examination or objective testing of Mr. Norton and Dr.

11   Cogan did not answer the question of whether or not a physical evaluation had been performed

12   for the incapacity evaluation.  Tr. 930-931, 956-958; *see Bayliss*, 427 F.3d at 1216 (ALJ may

13   reject an opinion that is "brief, conclusory, and inadequately supported by clinical findings.").

14   Absent clinical findings or other explanation of the basis for Dr. Cogan's opinions, as well as for

15   the same reasons discussed above with respect to Dr. Staker's opinions, the ALJ reasonably

16   discounted Dr. Cogan's opinions as inconsistent with the longitudinal treatment record, objective

17   clinical findings, physical examination findings, and evidence his pain was adequately managed

18   with treatment.

19        *2.    Mental Impairments*

20        Mr. Norton contends the ALJ erred in rejecting the opinions of Kimberly Wheeler,

21   PH.D., Norma Brown, Ph.D., Katrina Higgins, Psy.D. and Dan Neims, Psy.D.  Dkt. 9 at 12-17.

22   The Court disagrees.

23        In October 2012, Dr. Higgins examined Mr. Norton and diagnosed him with Asberger's

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 13

1    disorder, reading disorder, disorder of written expression and major depressive disorder,

2    recurrent, mild.  Tr. 1170-1174.  Dr. Higgins found Mr. Norton would "always struggle with

3    social relationships and interactions" and his "idiosyncratic manner of doing things, as well as

4    his insistence on routine, could impair his ability to perform work duties with adequate pace and

5    perseverance."  *Id.*  Dr. Higgins opined that Mr. Norton could carry out short and simple

6    instructions and maintain regular attendance "but accommodation would need to be made

7    concerning his interaction with others and pace of work."  *Id.*

8         In June 2008, Dr. Brown examined Mr. Norton and noted he had moderate depressive

9    symptoms, expressions of anger, and verbal expressions of anxiety or fear, and marked social

10   withdrawl.  Tr. 472-493.  Dr. Brown diagnosed Mr. Norton with Asperger's disorder, depressive

11   disorder, NOS, disorder of written expression and reading disorder.  *Id.*  In the section of the

12   functional assessment denominated "social factors", Dr. Brown opined that Mr. Norton had

13   marked to severe limitations in the ability to: relate appropriately to co-workers and supervisors;

14   respond appropriately to and tolerate the pressures and expectations of a normal work setting;

15   care for self, including personal hygiene and appearance; control physical or motor movements

16   and maintain appropriate behavior.  Tr. 474.  Dr. Brown indicated the basis for the assessment

17   was Mr. Norton's very low tolerance for frustration, little patience, social isolation, and very

18   poor social judgment.  *Id.*  Dr. Brown further opined that it would be difficult for Mr. Norton to

19   be hired in many jobs and keep a job because of his poor grooming and hygiene and poor social

20   skills.  Tr. 422.  In April 2009, Dr. Brown gave an additional diagnosis of generalized anxiety

21   disorder and again opined Mr. Norton had marked to severe limitations in the same "social

22   factors" areas described in her June 2008 report.  *Id.*  In February 2010, Dr. Brown again opined

23   Mr. Norton had marked to severe limitations in the same "social factors" areas described in her

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 14

1  June 2008 report and indicated again he "has very poor frustration tolerance and has very poor

2  coping skills to deal with stress."  Tr. 1133-1137.

3       In June 2007, Dr. Wheeler examined Mr. Norton and diagnosed depressive personality

4  disorder.  Tr. 434.  In the section of the functional assessment denominated "social factors" Dr.

5  Wheeler indicated marked limitations in the ability to relate appropriately to co-workers and

6  supervisors and control physical or motor movements and maintain appropriate behavior,

7  moderate limitations responding appropriately to and tolerating the pressures and expectations of

8  a normal work setting (indicating he would "likely respond with irritation, petulance") and in the

9  ability to care for self, including personal hygiene and appearance.  *Id.*  In November 2007, in

10  the section denominated "social factors", Dr. Wheeler indicated Mr. Norton had moderate

11  limitations in his ability to relate appropriately to co-workers and supervisors and to respond

12  appropriately to and tolerate the pressures and expectations of a normal work setting and marked

13  limitations in his ability to care for himself including personal hygiene and appearance, control

14  physical or motor movements, and maintain appropriate behavior.  Tr. 454.

15       In January 2011, Dr. Neims diagnosed Mr. Norton with major depressive disorder,

16  moderate, anxiety disorder, and personality disorder, avoidant and dependent.  Tr. 1224-1227.  In

17  the section of the opinion entitled "cognitive and social factors" Dr. Neims found Mr. Norton

18  moderately limited in his ability to learn new tasks, perform routine tasks without undue

19  supervision, and be aware of normal hazards and take appropriate precautions.  *Id.*  He found Mr.

20  Norton severely limited in his ability to communicate and perform effectively in a work setting

21  with public contact and markedly limited in his ability to communicate and perform effectively

22  in a work setting with limited public contact and to maintain appropriate behavior in a work

23  setting.  *Id.*

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 15

1      In January 2012, Dr. Neims indicated that Mr. Norton presented with moderate to marked

2 vegetative symptoms of depression and was slow and fatigued.  Tr. 932-936.  Dr. Neims

3 reiterated his 2011 opinion with respect to limitations in the "cognitive and social factor" areas.

4 *Id.*  Dr. Neims further found Mr. Norton moderately to markedly limited in performing activities

5 within a schedule, maintaining regular attendance, and being punctual within customary

6 tolerances; sustaining an ordinary routine without special supervision; working in coordination

7 with or proximity to others without being unduly distracted by them; and completing a normal

8 workday/workweek.  *Id.*  Dr. Neims opined Mr. Norton had marked limitations in his ability to

9 maintain appropriate behavior in the work setting and accept instructions and respond

10 appropriately to criticism from supervisors.  *Id.*

11      The ALJ discounted these opinions as "inconsistent with the claimant's mental health

12 treatment history, his performance on mental status testing in the treatment setting, and his

13 documented daily activities and social functioning set forth above."  Tr. 1470.  Mr. Norton

14 contends this general statement is insufficient.  Dkt. 9 at 13.  However, the ALJ did not simply

15 offer a conclusory statement without explanation but, instead, referred to his prior detailed

16 discussion of both the medical record and Mr. Norton's activities of daily living.  *Cf. Embey v.*

17 *Bowen*, 849 F.2d 418, (9th Cir. 1988) (conclusory reasons for discounting a medical opinion are

18 insufficient); *and cf. Brown-Hunter v. Colvin*, 806 F.3d 487, 491-492 (9th Cir. 2015).  As noted

19 above, an ALJ may properly reject a medical opinion that is inconsistent with the record.  *See*

20 *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Orn v. Astrue*, 495

21 F.3d 625 (9th Cir. 2007); *see also* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent

22 an opinion is with the record as a whole, the more weight we will give that opinion.").

23 Moreover, an ALJ may discount a medical opinion that is conclusory, brief, and unsupported by

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 16

1  the record as a whole or by objective medical findings.  *See Batson*, 359 F.3d 1190, 1195.

2  Inconsistency with a claimant's daily activities is also a valid reason to discount a medical

3  opinion.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-602 (9th Cir. 1999).

4          Here, the ALJ gives a detailed summary of the longitudinal medical record which he

5  reasonably finds inconsistent with the provider's opinions of significant mental health symptoms

6  and limitations.  For instance, the ALJ notes that, up until his alleged disability onset date in

7  August 2005, Mr. Norton had "worked despite his dyslexia and learning disorder and he did not

8  stop working due to any mental health symptoms."  *Id.*  The ALJ further notes that the record

9  shows Mr. Norton's "depression and anxiety have been adequately managed with medication

10  management."  *Id.*; *see Warre*, 439 F.3d at 1006 ("Impairments that can be controlled effectively

11  with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

12  In specific, the ALJ summarizes Mr. Norton's medical records as follows:

13          [In November 2005,] testing showed [Mr. Norton had] a learning disability of
            expressive writing and reading as well as dyslexia.  Dr. Pryor was also

14          concerned that [Mr. Norton] was developing some signs and symptoms of
            depression.  However, he had worked for more than 10 years and Dr. Pryor

15          noted that his multiple strengths made him a viable candidate for Division of
            Vocational Rehabilitation (DVR). … [In January 2007,] Dr. Cloud opined that

16          [Mr. Norton] would have problems reading, writing, and dealing with the public,
            but that he could perform work activities on a consistent basis given his work

17          history.  In August 2007, [Mr. Norton's] mental status was unremarkable[,] …
            [h]e was started on medications and was doing well without side effects later in

18          the year.  His mood remained well-managed in mid-2008 [and] [h]is symptoms
            were stable in October 2008.  His mood and social interaction improved on
            medication, [h]is anxiety was better controlled and he was no longer having

19          anxiety attacks.  He had normal affect and nonpressured speech and …
            continued to do well on medication in June 2009.  He had normal mood and

20          affect … in August 2009.  He received some counseling and, upon discharge in
            late-2009 he looked very upbeat as he realized that things were going decent in
            his life.  [His] medication was adjusted in December 2011 and he was reportedly

21          less depressed the following month.  He was alert and cooperative with normal
            mood, affect, attention span, and concentration … in late-2011 and mid-2012.

22          In July 2012, he reported he was not acutely depressed and he denied that his
            anxiety disrupted his social activities or interactions, although he got frustrated
            and overwhelmed at times due to pain.  In August 2012, a screen was negative

23          for depressed mood or marked diminished interest or pleasure.  He was doing
            well on Zoloft in late-2013.  Pain management records from mid-2014 indicate

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 17

that he had normal mood, affect, and thought processes.  He was oriented and
review of systems was negative for anxiety, depression, or sleep disturbance
when he followed up for back pain in November 2014 and 2015.  His depression
remained under control on medication in late-2015.  The claimant was referred
to mental health treatment following complaints of increased depression and
anxiety in February 2016 … [but] he reportedly benefitted from adjustment to
his psychotropic medication regimen.

Tr. 1466-1467.  The ALJ reasonably found the above opinions inconsistent with the treatment

notes and the overall longitudinal medical record.  Mr. Norton points out a few other treatment

notes indicating some instances of more significant symptoms.  Dkt. 9 at 16-17.  However, at

best, Mr. Norton's argument amounts to an alternative interpretation of the record but fails to

establish the ALJ's interpretation is unreasonable.  *See Tommasetti*, 533 F.3d at 1038.

The ALJ also reasonably discounted the more significant social limitations opined by the

providers as inconsistent with Mr. Norton's demonstrated activities.  Tr. 1467.  For instance,

despite the opinions that Mr. Norton had a low frustration tolerance, had difficulty interacting

socially and was socially withdrawn, the ALJ noted that Mr. Norton had friends who he enjoyed

spending time with, was able to live with three roommates (one of whom had a child), and there

was no indication he had any significant problems interacting with his providers, friends or

roommates.  Tr. 1461.  The ALJ further noted that Mr. Norton was capable of going outside

alone, driving, shopping, handling his own money and engaging in activities such as fishing and

playing games with his friends.  *Id.*  Mr. Norton points to Dr. Cloud's opinion indicating that,

given extreme reactions towards perceived wrongdoing in the past, Mr. Norton would have

trouble dealing with the general population.  Dkt. 9 at 17.  However, the ALJ agreed Mr. Norton

should be precluded from interacting with the general public and included such a limitation in

the RFC.

The ALJ also specifically discounts Dr. Brown's opinion that Mr. Norton was markedly

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 18

1    socially withdrawn and Dr. Neims' finding of moderate to marked vegetative symptoms of

2    depression as inconsistent with the contemporaneous treatment notes demonstrating his

3    depression has been adequately controlled with medication and his ability to engage in various

4    social as well as independent activities.  Tr. 1461-1462, 1467-1468.  As discussed above,

5    substantial evidence supports this conclusion.

6        Mr. Norton argues that some of his symptoms and limitations could derive from his long

7    standing developmental and personality disorder impairments and, thus, even if his depression

8    improved, his limitations may still be significant.  Dkt. 9 at 17.  However, this argument is

9    largely speculative and, as the ALJ points out, Mr. Norton was able to work with these long

10   standing impairments for ten years prior to his alleged disability onset date.  Tr. 466-1467, 1470.

11   Under the circumstances, the Court finds the ALJ reasonably discounted the opinions of Dr.

12   Wheeler, Dr. Brown, Dr. Higgins, and Dr. Neims.

13   **C.    Mr. Norton's Symptom Testimony**

14       The ALJ found the medical evidence of Mr. Norton's underlying impairments might

15   reasonably produce the symptoms alleged and did not find that Mr. Norton was malingering.  Tr.

16   1463-1464.  Consequently, the ALJ was required to provide specific, clear and convincing

17   reasons for rejecting Mr. Norton's testimony.  *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir.

18   2015).  If the ALJ's reasons for discounting a claimant's subjective symptom testimony are

19   supported by substantial evidence in the record, the Court may not engage in second-guessing.

20   *Thomas*, 278 F.3d at 959.  Factors that an ALJ may consider in evaluating a claimant's symptom

21   testimony include inconsistencies in testimony or between testimony and conduct, inconsistency

22   with the medical evidence, daily activities, and unexplained or inadequately explained failure to

23   seek treatment or follow a prescribed course of treatment.  *Orn v. Astrue*, 495 F.3d 625, 636 (9th

1    Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996); Social Security Ruling

2    (SSR) 16-3p.

3        Mr. Norton contends the ALJ erroneously rejected his testimony as unsupported by the

4    medical evidence. Dkt. 9 at 18. Specifically, Mr. Norton argues the ALJ's erroneous failure to

5    include chronic pain syndrome as a severe impairment "may explain why his findings were

6    inconsistent with some medical findings." *Id.* However, as noted above, Mr. Norton fails to

7    establish the ALJ harmfully erred in failing to include chronic pain syndrome as a severe

8    impairment at step two. The ALJ discounted Mr. Norton's testimony regarding the severity of

9    his symptoms as inconsistent with the medical evidence and specifically discussed portions of

10   the medical record which he concluded undermined Mr. Norton's testimony. Tr. 24-25. For

11   instance, the ALJ noted that MRI in 2005 showed only mild to moderate degenerative findings in

12   the lumbar spine, which the doctor reviewing the results opined did not explain the severity of

13   symptoms, and subsequent MRIs did not show significant deterioration. Tr. 354, 1464-1466.

14   The ALJ further noted that bone scans showed only mild uptake at the SI joints and on physical

15   examination Mr. Norton frequently exhibited minimal findings. Tr. 1464-1469.

16       The ALJ further noted that testifying medical expert, Dr. Kwock (whose opinion he gives

17   significant weight) described Mr. Norton's degenerative disc disease and SI joint osteoarthritis as

18   mild, indicated that despite his complaints of radiating back pain examinations revealed nothing

19   to suggest neurological involvement, and found that, with these impairments, Mr. Norton could

20   perform light work with some additional limitations. Tr. 1498-1506. Apart from his argument

21   that the ALJ erred in evaluating chronic pain syndrome, Mr. Norton does not otherwise

22   specifically challenge the ALJ's finding that the medical evidence discussed is not consistent

23   with Mr. Norton's testimony and, in fact, appears to acknowledge some apparent inconsistencies.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 20

1   Dkt. 9 at 18.  Thus Mr. Norton has failed to carry his burden of proof to establish the ALJ

2   harmfully erred in discounting his testimony on this basis.  *See Avila v. Astrue*, No. C07-1331,

3   2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at * 2 (unpublished opinion) (citing *Northwest*

4   *Acceptance Corp. v. Lynnwood Equip., Inc*., 841 F.2d 918, 923-24 (9th Cir. 1996) (party who

5   presents no explanation in support of claim of error waives issue); *see also Shinseki v. Sanders*,

6   556 U.S. 396, 409 (2009)( "[T]he burden of showing that an error is harmful normally falls upon

7   the party attacking the agency's determination.").

8       Mr. Norton also argues the ALJ erred in discounting his testimony on the grounds that his

9   condition improved with treatment.  Dkt. 9.  The ALJ notes that Mr. Norton cites various records

10  indicating that he continued to report symptoms even with treatment.  *Id.*  However, the ALJ did

11  not find that Mr. Norton had no ongoing symptoms or impairments and Mr. Norton fails to

12  establish the ALJ's reading of the record was unreasonable.  *Tommasetti*, 533 F.3d at 1038.

13      Mr. Norton also argues the ALJ erred in rejecting his testimony as inconsistent with his

14  activities of daily living.  Dkt. 9 at 17-19.  He contends that performance of activities on an

15  occasional basis does not show he can work full time and the record shows his activities are

16  limited by pain.  *Id.* at 18.  The ALJ found Mr. Norton's activities to be inconsistent with his

17  claim that he is disabled.  Tr. 1461, 1468.  Specifically, the ALJ noted that Mr. Norton's

18  allegations of incapacitating pain and mobility problems are inconsistent with the record of his

19  activities which show he was able to: drive to California for a week in May 2006; go fishing in

20  May 2010; work on his roof in mid-2011; lift a heavy object in April 2012; perform a lot of work

21  around the house including working with a water tank in September 2015.  *Id.*  As the ALJ notes,

22  Mr. Norton stated he was in constant pain, used a cane all of the time, had trouble keeping his

23  balance, and was unable to sit, stand or walk for prolonged periods.  Tr. 1463-1464.  The ALJ

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 21

reasonably found Mr. Norton's allegations regarding the severity and limiting effect of his

symptoms inconsistent with his ability to perform the above activities, even if some of the more

strenuous activities (i.e. working on a roof, lifting heavy objects, lifting a water tank) caused

some aggravation of his symptoms.  The ALJ also noted that in January 2011, Mr. Norton

alleged he could only sit or stand for twenty minutes before he needed to lie down.  Tr. 869.

However, just a few months earlier, in August 2010, Mr. Norton reported some back soreness

due to sitting in a chair for six hours playing games with friends.  Tr. 1461.  Moreover, although

in July 2010 Mr. Norton claimed the light from television and computers triggered his migraines,

he indicated he enjoys playing computer games such as World of Warcraft and the record

references him using the computer before going to bed.  Tr. 1468.

The ALJ also noted that Mr. Norton's activities demonstrated his alleged social and

cognitive deficits were not as debilitating as he claimed.  For instance, the ALJ noted that

although Mr. Norton claimed he needed to be reminded about his appointments and to take his

medication, he lived alone at times and there was no indication he had difficulty maintaining his

medications or attending his appointments.  Tr. 1468.  Moreover, although Mr. Norton alleged

two or three anger outbursts a week, he was able to live with roommates and there was no

indication he had difficulty getting along with friends or providers and, in fact, regularly played

board games with friends.  *Id.*  Mr. Norton fails to demonstrate the ALJ's findings lack support

in the record.  Rather, Mr. Norton essentially argues that his activities do not capture the true

nature of his limitations and that, as he testified, he struggles with performing many daily

activities.  Dkt. 9 at 18-19.  However, even if Mr. Norton's view of his ability to perform daily

activities suggests some difficulty functioning, the ALJ may rely upon a claimant's activities as

grounds for discrediting the claimant's testimony to the extent that they contradict claims of a

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 22

1   totally debilitating impairment.  *See Molina*, 674 F.3d at 1113.  This is what the ALJ did here.

2   The ALJ considered and rejected Mr. Norton's testimony that he is disabled on the grounds that

3   the activities discussed above show that Mr. Norton is more functional than he claims.

4          The ALJ also offered several other clear and convincing reasons for discounting Mr.

5   Norton's testimony which Mr. Norton does not challenge.  Specifically, although his alleged

6   disability onset date coincides with the end of his employment, the ALJ notes that Mr. Norton

7   stopped working for reasons unrelated to his alleged impairments.  *See Bruton v. Massanari*, 268

8   F.3d 824, 828 (9th Cir. 2001) (In evaluating a claimant's symptom testimony an ALJ may

9   consider the fact that the claimant stopped working for reasons unrelated to his alleged

10  impairments); Tr. 106, 119 (indicating he was placed on light duty due to his back in August

11  2005 performing errands and clerical work and stopped working at the end of that month due to

12  lack of work when his company did not get a new contract).  The ALJ also noted that Mr. Norton

13  was prescribed physical therapy in 2013 but that, although he showed mild benefit after a couple

14  of sessions, he was discharged after no showing or cancelling several times and was presumed by

15  the physical therapist to be managing adequately on his own with no need for further physical

16  therapy.  Tr. 1428, 1465; *see Orn*, 495 F.3d at 636 ("[I]f a claimant complains about disabling

17  pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may

18  use such failure as a basis for finding the complaint unjustified or exaggerated...."); SSR 16-3p.

19  These were valid reasons to discount Mr. Norton's symptom testimony and they are supported

20  by substantial evidence in the record.

21          Accordingly, the ALJ did not err in discounting Mr. Norton's symptom testimony.

22  **D.    Lay Testimony**

23          Mr. Norton also contends the ALJ erred in rejecting the lay witness testimony of Dorothy

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 23

1    Litchfield, Gregory Ffyhr, Doug Nolan, John Velebit, and Bill Hughes.  Dkt. 9 at 19.  The Court

2    disagrees.

3    The Court notes the lay witnesses provided testimony similar to that of Mr. Norton i.e.,

4    both Mr. Norton and the lay witnesses stated that Mr. Norton was less functional due to disabling

5    pain, mobility problems and social and cognitive deficits than the ALJ found.  Mr. Norton does

6    not identify any limitation described by the lay witnesses that was not already described by the

7    claimant.  The ALJ properly rejected Mr. Norton's testimony about the severity of his limitations

8    on the grounds that the claims were inconsistent with the longitudinal treatment history, the

9    objective clinical findings, his performance on physical and mental status examinations, and

10   other inconsistencies in the record.  Tr. 1471.  The ALJ's well-supported reasons for rejecting

11   Mr. Norton's testimony apply equally well to the lay witness testimony and the ALJ did not err

12   in relying upon those same reasons to reject the lay witness testimony.  *See Valentine v. Comm'r*

13   *Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (Where an ALJ has provided clear and

14   convincing reasons for finding a claimant not fully credible, those reasons are germane reasons

15   for rejecting similar lay witness testimony.).

16                                                  **CONCLUSION**

17   For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this

18   case is **DISMISSED** with prejudice.

19       //

20       //

21       //

22       //

23
ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 24

1

2      DATED this 25th day of July 2017.

3

4

5

6      _____
       JOHN C. COUGHENOUR
7      United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 25